UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

DALTON HOLLINS and DYLAN HOLLINS.,

    Plaintiffs,

v.

MEGAN CARDOSI, KAREN LINDSEY, HEATHER ARNOLD, EMILY YOUNG, and SANDRA ANTE,

    Defendants.

Case No.  4:22-cv-141

## COMPLAINT AND JURY DEMAND

1. Dalton and Dylan Hollins (collectively the "Hollins") bring this action because the Individual Defendants, employees of the Indiana Department of Child Services ("DCS"), placed the Hollins in a foster home that the Defendants knew was not a safe place for children. This exposed the Hollins to extremely unsafe and abusive conditions, conditions which eventually led to the conviction and imprisonment of the foster parents for child abuse.

2. The Hollins seek redress for the violation of their civil rights under federal law and the Fourteenth Amendment to the United States Constitution.

3. This action is brought under 42 U.S.C. § 1983.

### THE PLAINTIFFS

4. Dalton Hollins is an individual who resides in Dearborn County, Indiana.

5. Dylan Hollins is an individual who resides in Dearborn County, Indiana.

## THE DEFENDANTS

6. At all times relevant to this complaint, the State of Indiana is a state of the United States of America.

7. At all times relevant to this complaint, Megan Cardosi ("Cardosi") was a Family Case Manager for the DCS, Dearborn County Office. Pursuant to 42 U.S.C. § 1983, Cardosi was acting under color of state law by virtue of her position at DCS.

8. At all times relevant to this complaint, Karen Lindsey ("Lindsey") was a Family Case Manager for the DCS, Dearborn County Office. Pursuant to 42 U.S.C. § 1983, Lindsey was acting under color of state law by virtue of her position at DCS.

9. At all times relevant to this complaint, Heather Arnold ("Arnold") was a Family Case Manager Supervisor for the DCS, Dearborn County Office. Pursuant to 42 U.S.C. § 1983, Arnold was acting under color of state law by virtue of his position at DCS.

10. At all times relevant to this complaint, Emily Young ("Arnold") was a Foster Care Specialist for the DCS in Dearborn County. Pursuant to 42 U.S.C. § 1983, Young was acting under color of state law by virtue of his position at DCS.

11. At all times relevant to this complaint, Sandra Ante ("Ante") was the Local Office Director for the DCS, Dearborn County Office. Pursuant to 42 U.S.C. § 1983, Ante was acting under color of state law by virtue of her position at DCS.

12. Defendants Cardosi, Lindsey, Arnold, Young, and Ante (the "Defendants") acted individually and jointly under color of state law to deprive Plaintiffs of their civil rights. Because they acted knowingly, recklessly and in disregard of well-

established law, with no objectively reasonable basis for their actions, the Defendants do not have qualified immunity from damages under the standards set forth by the United States Supreme Court, the Seventh Circuit, and/or the courts of the State of Indiana.

## VENUE

13. Dearborn County is a preferred venue for this action under Indiana Trial Rule 75(A)(1) and (5).

## FACTS

### I. The Hollins were alleged to be CHINS and placed in foster care.

14. The Hollins are children of Sherry Murphy.

15. In August 2016, DCS removed the Hollins from their mother's custody.

16. Soon thereafter, DCS alleged that the Hollins were Children in Need of Services ("CHINS").

17. The Hollins were found to be CHINS.

18. As a result of their removal from their home, the Hollins were placed into foster care.

19. DCS's Child Welfare Policy Manual recognizes that "[e]very child has a right to appropriate care in a safe, healthy, and supportive community."

20. DCS's Child Welfare Policy Manual requires that children placed outside of their home be given an "appropriate placement."

21. An appropriate placement in certain circumstances can be placement in a foster home.

22. A foster family must be licensed by DCS in order to operate a foster family home.

23. The process of licensing a foster family home is designed to ensure that children placed in a foster home have personal security and reasonably safe living conditions.

24. If a child is placed with a foster family, DCS is required to check on the status of the child in the foster home on a regular basis.

25. The requirement that DCS check on the status of the child in the foster home on a regular basis is designed to ensure that children placed in a foster home have personal security and reasonably safe living conditions.

**II.     The Hollins were placed with the Combs.**

26. Timothy and Diane Combs were licensed to operate a foster family home in Indiana.

27. After children were placed with the Combs, it was discovered that the Combs home was not a place where children had personal security or reasonably safe living conditions.

28. At some point, an investigation was performed of the Combs home and investigators concluded that the children placed there were subject to child abuse or neglect.

29. DCS and the Defendants were aware of the results of this investigation.

30. On information and belief, the Combs' foster family license was revoked or suspended due to the child abuse or neglect discovered at that home.

31. On October 20, 2016, the Hollins were placed with the Combs by Defendants.

32. The Hollins placement at the Combs' home was after the Combs home had previously been found not to be a place where children had personal security or reasonably safe living conditions.

33. While at the Combs home, the Hollins and other children placed there were subjected to child abuse and neglect at the hands of the Combs.

34. The forms of child abuse and neglect that the Hollins were subjected to at the Combs home included physical abuse, the denial of food, and excessive physical labor that interfered with the Hollins' ability to perform their schoolwork.

35. These forms of child abuse and neglect are similar to those suffered by the children who had previously stayed at the Combs home and who were the subject of the prior investigation of the conditions at the Combs home.

36. Defendants knew that the Combs home was not a place where children had personal security or reasonably safe living conditions.

37. While the Hollins were placed with the Combs, Defendant Lindsey called the Combs to notify them before a DCS caseworker would drop in to check on the home and the children's welfare.

38. Defendants knew that the Combs foster family home license had previously been suspended or revoked as a result of the abuse or neglect of children in that home.

39. Despite this knowledge, Defendants did not ensure that the children placed with the Combs, including the Hollins, had personal security or reasonably safe living conditions while living in the Combs home.

### III. The Combs' abuse of the children in their home comes to light.

40. The Hollins were placed in the Combs home for about 21 months.

41. This placement ended only after video evidence of the Combs' treatment of the children placed with them came to light.

42. This video evidence included physical abuse and neglect.

43. Both DCS and law enforcement investigated the Combs' conduct.

44. The Combs eventually pleaded to multiple felony criminal offenses, which included attempted aggravated battery and battery on a child, and they were each sentenced to prison for their abuse and neglect of the children placed in their care by Defendants.

### COUNT I – VIOLATIONS OF 42 U.S.C. § 1983

45. Plaintiffs incorporate by reference the previous allegations in this complaint.

46. The Defendants violated Plaintiffs' Fourteenth Amendment substantive due process rights to personal security or reasonably safe living conditions by placing them in a home that the Defendants knew was unsafe for children.

47. The Defendants violated Plaintiffs' Fourteenth Amendment substantive due process rights to personal security or reasonably safe living conditions by leaving the Plaintiffs in a home that the Defendants knew was unsafe for children.

48. The Defendants violated Plaintiffs' Fourteenth Amendment substantive due process rights to personal security or reasonably safe living conditions by not ensuing that the Plaintiffs placement in the Combs' home did not subject Plaintiffs to abuse or neglect.

49. For each violation of 42 U.S.C. § 1983, the Hollins seek to recover the following:

    a. Compensatory damages in an amount to be determined by a jury;

    b. Punitive damages in an amount to be determined by a jury;

    c. Reasonable attorney and expert fees pursuant to 42 U.S.C. § 1988; and

    d. Any further relief that may be appropriate.

WHEREFORE, Plaintiffs pray for damages in an amount of money which will fairly and adequately compensate them for all losses, injuries and damages, for the costs of this action, reasonable attorney's fees, for specific performance, and for all other relief just and proper under the circumstances.

## JURY DEMAND

Plaintiffs request a trial by jury.

Respectfully submitted,

WILLIAMS & PIATT, LLC

/s/ Brad A. Catlin
Brad Aaron Catlin, Atty. No. 21570-29
1101 North Delaware Street
Indianapolis, IN 46202

7

Tel: (317) 633-5270
Fax (317) 426-3348
brad@williamspiatt.com

ATTORNEY FOR PLAINTIFFS